# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES NATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09 C 6917 |
| ) | |
| AMERICAN CAPITAL, LTD. d/b/a ) | |
| AMERICAN CAPITAL STRATEGIES, LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

James Nation has sued American Capital, Ltd. He alleges that American Capital tortiously induced his former employer, The Spring Air Company, to breach a severance agreement. The parties have filed cross-motions for summary judgment. For the reasons stated below, the Court grants American Capital's motion and denies Spring Air's motion.

## Background

The Court takes the following facts from the parties' submissions on the summary judgment motion.

In 1990, James Nation began working for Spring Air, a mattress sales company, as its senior vice president for national accounts. Spring Air operated as a co-op in that it licensed its brand name to independent mattress manufacturers. In 1995, Spring Air promoted Nation to president and chief executive officer.

In June 2007, HIG Capital, an investment firm that had acquired Spring Air

licenses in the past, purchased Spring Air and most of its remaining licenses. American Capital, a creditor of Spring Air, provided financing to HIG Capital for the purchase. As part of the transaction, American Capital acquired a minority equity interest in Spring Air and one seat on its seven-member board of directors.

Nation left the company in August 2007 after learning that Spring Air intended to replace him. He negotiated a severance agreement entitling him to $1,243,140 over a period of fifteen months. As a condition of the agreement, Nation agreed not to work for competitors, including Serta, through December 31, 2008. Spring Air entered into similar agreements with three other executives: Eric Spitzer, Ron Lueptow, and Vince Zupkus.

In January 2008, Spring Air advised American Capital that it faced an urgent liquidity crisis and required additional financing to carry out its business plan and satisfy credit obligations. American Capital and HIG each invested eleven million dollars in the company. American Capital thereby increased its minority ownership in Spring Air, and it acquired two additional seats on the board of directors. At that time, American Capital appointed Michael Michienzi to the board.

By April 2008, Spring Air required another significant cash infusion. HIG and American Capital each invested an additional $1.5 million into Spring Air to maintain its operations. American Capital became the majority equity holder in Spring Air and acquired a fourth seat on the company's board of directors. Michienzi became the chairman of the board. In June 2008, Spring Air hired Steven Cumbow, American Capital's former vice president of finance, as its new chief financial officer.

In July or August 2008, Spring Air informed Nation, Spitzer, Lueptow, and

2

Zupkus by e-mail that it was suspending their severance payments.  The parties dispute American Capital's role in the suspension decision.  Nation attributes the decision to American Capital, acting through Michienzi.[1]  At the time, American Capital was both the majority equity holder and largest creditor of Spring Air.  American Capital, in contrast, attributes the decision to Spring Air management.

Nation contacted Serta on August 25, 2008 to discuss employment and began working for Serta on September 15, 2008.  He earned a total of $106,384.64 from Serta by the end of 2008.  In late 2008, Spring Air resumed its payments to Spitzer, Lueptow, and Zupkus, but not Nation.

Spring Air never stabilized its cash flow problems.  In mid and late 2008, it deferred payments to vendors and renegotiated terms with its suppliers.  In May 2009, the company filed for bankruptcy.  Spring Air's failure cost American Capital millions of dollars.

Nation asserts that American Capital, acting through Michienzi, tortiously induced Spring Air to breach his severance agreement.  The parties agree that he received only $846,153.28 of the $1,243,140 owed to him under his severance agreement.

## Discussion

The parties have filed cross-motions for summary judgment.  American Capital seeks a judgment that it has no liability to Nation and, in the alternative, seeks judgment in its favor on its setoff defense.  Nation seeks a judgment that American Capital is liable for tortious interference with contract.  The Court addresses American Capital's

---

[1] Nation initially attributed Spring Air's suspension of his severance payments to Cumbow.  See Compl. 8-10.  He has since abandoned that argument.

motion first and thereby resolves Nation's motion.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The parties agree that Illinois law governs Nation's claim. To prevail on a claim of tortious interference with contract under Illinois law, "a plaintiff must prove: 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified inducement of a breach of the contract by the defendant; 4) the subsequent breach of the contract by the other party, caused by the defendant's inducement; and 5) damages." *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir. 1994) (citing *Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 868-69, 509 N.E.2d 444, 445 (1987)); *see also Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). To survive summary judgment, the plaintiff must show that there is a genuine issue of fact as to each of these elements. *See Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). American Capital denies that it induced Spring Air to breach the agreement, denies that any such conduct was unjustified, and contends that Nation's 2008 earnings from Serta should

4

constitute a setoff against any damages to which Nation might be entitled.

The Court assumes for purposes of the present motion that American Capital induced the breach of Nation's severance agreement and addresses whether Nation has shown a genuine factual dispute on the question of unjustified interference. The Court must first determine whether American Capital had a conditional privilege to interfere, and if so, whether Nation has provided evidence from which a reasonable jury could find that he has overcome the privilege. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 156, 545 N.E.2d 672, 677 (1989). The existence of a conditional privilege is an issue of law. *See id.* at 157-58, 545 N.E.2d at 677. Whether a plaintiff has overcome a conditional privilege is an issue of fact. *See id.*

Under Illinois law, "a party who interferes with another party's contract is . . . privileged from liability where the party acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved." *Price v. Zazove*, 959 F.2d 1395, 1397 (7th Cir. 1992). "[A]n individual may be privileged to interfere in the business affairs of another, depending on his purpose and methods, when the interference takes a socially sanctioned form." *Langer v. Becker*, 176 Ill. App. 3d 745, 749, 531 N.E.2d 830, 832 (1988) (citing *Swager v. Couri*, 77 Ill. 2d 173, 190, 395 N.E.2d 921, 927 (1979)) (other citations omitted).

Pursuant to this principle, corporate directors, corporate officers, and shareholders normally enjoy protection from liability for acts committed on behalf of the corporation. *See Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 866 (7th Cir. 2009) (corporate officers); *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 157, 545 N.E.2d at 677

5

(corporate officers and directors); *MGD, Inc. v. Dalen Trading Co.*, 230 Ill. App. 3d 916, 920, 596 N.E.2d 15, 18 (1992) (corporate directors and majority shareholders); *Swager*, 77 Ill.2d at 191, 395 N.E.2d at 928 (corporate officers, directors, and shareholders). Likewise, a management company enjoys protection from liability for acts it commits on behalf of a corporation it is managing. *See HPI Health Care Servs., Inc.*, 131 Ill. 2d at 157, 545 N.E.2d at 677. The privilege applies to business entities as well as to individuals. *See id.* (applying the privilege to management company); *see also Stevenson v. ITT Harper, Inc.*, 51 Ill. App. 3d 568, 579-80, 366 N.E.2d 561, 570-71 (1979) (applying the privilege to a parent corporation).

To overcome a defendant's privilege, a plaintiff must establish that the defendant "induced the breach to further [its] personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation." *Von der Ruhr*, 570 F.3d at 866-67 (emphasis in original) (citations omitted); *see also HPI Health Care Servs., Inc.*, 131 Ill. 2d at 158, 545 N.E.2d at 678 (a defendant covered by the privilege "is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege"). If a privilege applies, to survive summary judgment the plaintiff must put forth evidence that would permit a finding that has overcome the privilege. *See HPI Health Care Servs., Inc.*, 131 Ill. 2d at 156, 545 N.E.2d at 676-77; *Williams*, 18 F.3d at 403.

American Capital's alleged conduct falls within the scope of a conditional privilege to interfere with Spring Air's contracts with others. It is undisputed that, at the time of the decision to suspend payments on Nation's contract, American Capital held a

6

majority equity interest in Spring Air and therefore was invested in Spring Air's continued viability. American Capital's interest in protecting its investment and Spring Air's value for shareholders is of at least equal value as Nation's interest in his contractual rights. *See, e.g.*, *Langer*, 176 Ill. App. 3d at 750, 531 N.E.2d at 833 (recognizing that "the stockholders of a corporation have an interest in the corporation and the right to lawfully influence the actions . . . of the corporation"); *MGD, Inc.*, 230 Ill. App. 3d at 920, 596 N.E.2d at 18 (reasoning that a corporate director and major shareholder had a duty to shareholders "to exercise business judgment in managing their affairs"). *Cf. Ios Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 374, 808 N.E.2d 606, 613 (2004) (stating that tort suits against corporate officers and directors for interference with creditors' contracts "would chill corporate officials from performing their duties").

Nation provides no evidence that would support a finding that he has overcome this privilege. He provides no evidence that American Capital induced the breach to further goals unrelated to the protection of its investment and Spring Air's value for shareholders or that it acted contrary to Spring Air's interests. Nation does not dispute that Spring Air faced a severe liquidity problem or that American Capital stood to lose millions of dollars if the company failed. Nation likewise does not dispute that, at the time Spring Air suspended his severance pay, it also suspended severance payments to three other former executives, deferred payments to vendors, and renegotiated terms with its suppliers. Indeed, Nation acknowledges that Spring Air acted "in order to save itself money as the lender of a dying company." P.'s Mem. in Support of Mot. for Summ. J. at 5. He also acknowledges that, "[w]hen American Capital discovered it had

7

invested heavily in a dying company, it did everything it could to save whatever of its investment was left, *which meant cutting spending everywhere*, including [his] severance agreement." *Id.* 7-8 (emphasis added).

Nation also presents no evidence that American Capital induced the breach to injure him personally. Indeed, he testified that he could not say that American Capital harbored any personal animus towards him, explaining:

> Q: [D]o you think the decision to stop paying you and the others was driven by personal animus?
>
> A: No. I could see them not - I don't think that they would have a negative feeling towards Mr. Zupkus or Mr. Spitzer, or I don't know about Mr. Lueptow, you know, because you have Mr. Cumbow coming into the job after he's out, and there was obviously some element of change of control there. So does he feel negativity towards him? I have no idea.
>
> Q: Okay.
>
> A. Possibly, but I don't -
>
> Q: Right. But do you -
>
> A: I don't know.
>
> Q: - think there was any personal animus directed at you in relation to the decision to stop making payments?
>
> A: I think they didn't like having to pay the money.

Def.'s LR 56.1 Stat., Ex. 3, 69-70. Though Nation has offered evidence that Spring Air resumed severance payments in late 2008 to Spitzer, Lueptow, and Zupkus, he does not dispute that this took place after he began working at Serta, a major competitor of Spring Air, making him no longer similarly situated to the other former executives. Based on this evidence, no reasonable jury could find that Nation satisfied his burden to show that American Capital's conduct was unjustified.

Nation argues that American Capital's status as both a majority shareholder and a primary creditor of Spring Air is sufficient to establish a genuine issue of fact on the question of unjustified interference. He suggests that American Capital improperly used its majority equity interest in Spring Air to assert its interests as a creditor. The Court disagrees that the fact of American Capital's dual status gives rise to a genuine factual dispute on the issue of unjustified conduct. Among other things, Nation provides no evidence that American Capital recouped any of its loans from Spring Air by improperly using its influence to suspend payments to Nation. Because no reasonable jury could find that Nation has met its burden to show unjustified conduct, his tortious interference claim fails.

The Court also notes the existence of authority suggesting that creditors enjoy a separate conditional privilege under Illinois law to use reasonable means to interfere with payment of other creditors to obtain payment of their own contracts. In *Connaughton v. Gertz*, 94 Ill. App. 3d 265, 418 N.E.2d 858 (1981), the court held that a union enjoyed a conditional privilege to induce an employer to breach the employment contracts of non-union workers. *See id.* at 270, 418 N.E.2d at 862. The court reasoned that, "[i]n most cases, conflicting contractual rights stand on an equal plane." *Id.* Pursuant to *Connaughton*, "when A has a valid contract with C, and C enters into a contract with B, and the enforcement of A's contract depends on the non-enforcement of B's contract, A is privileged to use any reasonable means to bring about a breach of B's contract with C to protect his own interest." *Id.* (citations omitted). Reasonable means include "legal act[s] which [are] not unreasonable in the circumstances." *Id. Cf.*

9

*Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 541 F. Supp. 1080, 1082 (N.D. Ill. 1982) (contrasting the use of "intimidation, force, coercion, and misrepresentation and threats").

Several courts in this district have relied upon *Connaughton* to hold that creditors "competing for payments from the same cash-strapped creditor" are privileged to use reasonable means to obtain payments on their contracts. *See Interlease Aviation Investors II L.L.C. v. Vanguard Airlines, Inc.*, No. 02 C 4801, 2004 WL 1149397, at *8 (N.D. Ill. May 20, 2004); *see also Miyano Machinery USA, Inc. v. Zonar*, No. 92 C 2385, 1994 WL 233649, at *5 (N.D. Ill. May 23, 1994); *Int'l Adm'rs, Inc.*, 541 F. Supp. at 1082. In *Miyano Machinery*, a court held that the competing creditor's privilege covered the conduct of a "very large creditor" whose contractual rights to payment from a corporation "literally dwarf[ed]" those of the plaintiff. *Miyano Machinery USA, Inc.*, 1994 WL 233649, at *5. Likewise, in *Interlease Aviation Investors*, a court applied a privilege in a similar factual context, reasoning:

> Due to its financial troubles, Vanguard could not meet its contractual obligations to either [Defendants] or Plaintiffs. The parties' contractual rights with respect to Vanguard necessarily conflicted because they were competing for payments from the same cash-strapped debtor.

*Interlease Aviation Investors II L.L.C.*, 2004 WL 1149397, at *8; *see also id.* at *8 n.11 (noting that, as in *Miyano Machinery*, the defendants' contractual rights to payment from Vanguard far exceeded those of the plaintiffs). These cases suggest that a large creditor is protected from liability when it uses its influence to induce a debtor with financial troubles to breach contracts with competing creditors, so long as the large creditor uses reasonable means.

10

This is a diversity action, and therefore the Court's duty is to apply the substantive law of Illinois, as it believes the Illinois Supreme Court would apply it. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Had Nation presented evidence that American Capital's sole interest was as a creditor trying to recoup what it was owed, the Court would have to determine whether the Illinois Supreme Court would recognize the competing creditor's privilege as described in *Interlease Aviation Investors* and *Miyano Machinery* and whether that privilege would apply in this case. Nation concedes that at the time of the decision to suspend his severance payments, American Capital was Spring Air's largest creditor and that Spring Air was struggling financially. He also concedes that he was a competing creditor of American Capital.

The Court need not decide these issues, however. It is undisputed that Nation must offer evidence from which a jury could conclude that any interference by American Capital in his severance agreement was unjustified. He has failed to do so.[2]

Because no reasonable jury could find that Nation can show that American Capital's conduct was unjustified, the Court need not address whether he has offered evidence that American Capital induced Spring Air to breach the agreement or whether Nation's 2008 earnings from Serta constitute a setoff against any damages.

---

[2] Nation argues that a separate "competitor's privilege" in tortious interference with prospective advantage cases does not apply because American Capital was not competing with Nation as a creditor of Spring Air. *See, e.g.*, *Fishman v. Estate of Wirtz*, 807 F.2d 520, 560 (7th Cir. 1986). That privilege, however, is not at issue in this case. In any event, it is undisputed that American Capital was indeed Spring Air's largest creditor.

**Conclusion**

For the foregoing reasons, the Court grants American Capital's motion for summary judgment [docket no. 56] and denies Nation's motion for summary judgment [docket no. 54]. The Court directs the Clerk to enter judgment in favor of the defendant.

                                                  /s  Matthew F. Kennelly
                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: April 22, 2011